**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shaykh Muhammad Abdul Aziz Klalid Bin Talal Al Saud, | No. CV 16-04405-PHX-SPL (JFM) |
| Plaintiff, | **ORDER** |
| v. | |
| Joseph M. Arpaio, et al., | |
| Defendants. | |

Plaintiff Shaykh Muhammad Abdul Aziz Klalid Bin Talal Al Saud, who is currently confined in Arizona State Prison Complex-Eyman, brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 21.) Defendants move for summary judgment, and Plaintiff did not file a response.[1] (Docs. 85.) The Court subsequently ordered Plaintiff to show cause why this action should not be dismissed for failure to prosecute (Doc. 91) and Plaintiff did not respond.

**I.    Background**

In his Second Amended Complaint, Plaintiff relevantly alleged as follows. On September 29, 2016, Plaintiff was taken into the custody of the Maricopa County Sheriff's Office (MCSO) and incarcerated in the Fourth Avenue Jail. (Doc. 21 at 4.) On his arrival, Plaintiff submitted a dietary request to Defendant Millard, the Commander of Religious

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) regarding the requirements of a response. (Doc. 87.)

1  Services, requesting an Islamic-Halal diet due to Plaintiff religious beliefs that requires him to eat Halal food prepared in the name of Allah and to not eat "unhealthy unclean foods" not prepared in the name of Allah. (*Id.* at 4-7.) Plaintiff told Millard and Defendants Ogar and Herrera that the MSCO's vegetarian diet did not meet his needs because it was not prepared in the name of Allah. (*Id.*) There were also "rotten spoil [sic] maggots moldy bread and fruit items" that "don't meet [Plaintiff's] dietary laws."

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated a First Amendment free exercise claim, a claim pursuant to the Religious Land Use and Institutionalized Persons Act (RLUIPA), and a Fourteenth Amendment conditions-of-confinement claim against Defendants Millard, Herrera, and Ogar. (Doc. 25.) The Court dismissed the remaining claims and Defendants. (*Id.*) Defendant Millard was subsequently dismissed pursuant to a Stipulation. (Doc. 75.)

**II.  Failure to Prosecute**

Plaintiff has failed to comply with the Court's Order to show cause. Although Plaintiff has filed notices indicating that he is not receiving some legal paperwork from certain Arizona Department of Corrections (ADC) officials, Plaintiff has repeatedly violated the Court's orders regarding seeking appropriate relief regarding his problems with legal paperwork. (*See* Docs. 92-95.) Moreover, Plaintiff's allegations regarding not receiving his legal paperwork are generally conclusory, Plaintiff has failed to provide any evidence that he has grieved any issue regarding failure to obtain legal paperwork as this Court previously instructed, and this Court does not have jurisdiction over the ADC or any ADC officials in this action.

Accordingly, Plaintiff's failure to comply with the Court's orders and failure to show cause for his failure to do so compels the conclusion that this action should be dismissed for failure to prosecute. *See Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986) (In determining whether Plaintiff's failure to prosecute warrants dismissal of the case, the Court must weigh the following five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk

of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.").

Alternatively, the Court will address the merits of Defendants' Motion for Summary Judgment.

### III. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw

all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

## IV. Facts

Plaintiff was in the custody of the MCSO between September 29, 2016 and April 20, 2017, and was again booked into MSCO custody on October 12, 2017. (Doc. 86 ¶¶ 1, 2.)[2] Plaintiff believes he may only consume foods prepared by sincere Muslims in the name of God and he must consume Halal meat. (*Id.* ¶ 3.) According to Plaintiff, for food to be prepared in the name of God, the person preparing the food must recite a prayer. (*Id.* ¶ 4.)

Plaintiff testified that on two occasions, he found maggots in his food, and on several other occasions, he found rocks in his food. (*Id.*) Plaintiff testified that he is served moldy bread in his meals, but it is replaced if he brings it to the officer's attention. (*Id.* ¶ 6.)

Imam Usama Shami, a certified Islamic Imam, provides chaplaincy services for pretrial detainees and prisoners in MCSO custody and has given guidelines to the MCSO as to what food is considered Halal. (Doc. 86-1 at 25-26.) Specifically, Shami asserts that (1) all foods are considered Halal except: pork and pork by-products, animals not slaughtered in accordance with Islamic law or that are dead before slaughter, alcoholic drinks and intoxicants, carnivorous animals and birds of prey, blood or blood by-products, and foods contaminated with the preceding categories; (2) Muslims may consume food that is prepared by non-Muslims so long as the food is Halal; (3) fruits, vegetables, and grains are inherently Halal and require no special invocation to render them such; (4) food need not be prepared by a Muslim to be Halal; and (5) food need not be prepared in the name of God to be Halal. (Doc. 86 ¶¶ 7-11.)

The Food Services Commander develops inmate diets and makes the final decision on what is served and MCSO's Quality Assurance Coordinator (QAC) or supervisor inspects the food that is prepared in the Food Factory to verify that it meets quality standards. (*Id.* ¶¶ 12-13.) The QAC conducts quality control inspections at each of

---

[2] Plaintiff is currently in the custody of the ADC.

MCSO's jail facilities once a week to ensure that food meets quality control guidelines. (*Id.* ¶ 14.) Bread is baked at the Food Factory daily, packaged, and delivered to the various jails by the fifth day after baking and is served the day after delivery. (*Id.* ¶ 15.) Hot entrees are made the day of service and checked for quality during and after the production process. (*Id.* ¶ 16.) Items such as rice, beans, and potatoes are cooked the day they are served. (*Id.* ¶ 17.) Ingredients are checked for freshness during delivery and rejected if the quality is unsatisfactory. (*Id.* ¶ 18.) Fresh produce is inspected during delivery, when it is washed, and again before service. (*Id.* ¶ 19.) The Food Factory has a Sanitarian who develops and implements food safety and sanitation practices and conducts inspections weekly. (*Id.* ¶¶ 21-22.) The Food Factory's employees are trained in food safety standards and tested to ensure understanding, and the Food Factory passes Maricopa County Health Inspections. (*Id.* ¶¶ 23-24.)

MCSO switched to the vegetarian diet in October 2013 and after the switch, the Food Factory no longer serves meat and the regular diet is kosher certified and Halal according to guidelines provided by Shami. (*Id.* ¶¶ 26-28.) The regular diet is evaluated by a Registered Dietician and meets or exceeds USDA standards. (*Id.* ¶ 32.) The regular diet provides 2600 calories and 95 grams of protein daily. (*Id.* ¶ 33.) The only vendor contracted with Maricopa County that carries Halal-compliant entrees obtains the meals from J & M Meals and My Own Meals. (*Id.* ¶ 35.) J&M pre-makes 500,000 entrees at a time, and many employees, including non-Muslims, are involved in the preparation. (*Id.* ¶ 36.) J & M employees do not pray as they prepare the premade entrees. (*Id.* ¶ 37.) My Own Meals are produced under kosher specifications and non-Muslims are involved in the production. (*Id.* ¶ 38.) Premade meals from J & M and My Own Meals are certified Halal by the Islamic Food and Nutrition Council of America. (*Id.* ¶ 39.)

The Food Services Division does not ask employees or applicants about their religious beliefs and does not require employees to pray as part of their job duties. (*Id.* ¶¶ 86-87.)

| | |
|---|---|
| 1 | If an inmate in the custody of the MCSO receives a meal that does not meet quality standards, he must inform an officer of problems before leaving the serving line so the problems can be corrected. (*Id.* ¶ 41.) |

If an inmate in the custody of the MCSO receives a meal that does not meet quality standards, he must inform an officer of problems before leaving the serving line so the problems can be corrected. (*Id.* ¶ 41.)

Defendant Herrera is a chaplain and her duties include organizing religious services, rites, holidays, and special events, providing pastoral counseling for inmates, responding to questions or concerns about religious practices/services, and responding to inmate requests for assistance with religious-related concerns. (Doc. 86 ¶¶ 70-71.) She does not work in the Food Services Division and has no authority over the Food Services Division. (*Id.* ¶¶ 72-73.) Defendant Ogar is a detention sergeant assigned to the Food Factory and is responsible for ensuring security of the Food Factory and responding to grievances; he is not involved in menu planning and has no authority to direct that Plaintiff be provided a specific diet and is not involved in the preparation of food. (*Id.* ¶¶ 74-81.)

## V. Discussion

### A. RLUIPA

Defendants argue that Plaintiff's RLUIPA claim should be dismissed because Plaintiff failed to exhaust his available administrative remedies and Plaintiff's individual capacity claims should be dismissed because RLUIPA does not permit recovery of damages.

Plaintiff's only available remedy in this action under RLUIPA is injunctive or declaratory relief. *See Sossamon v. Texas*, 563 U.S. 277, 293 (2011) (damages are not available under RLUIPA for official capacity claims); *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) ("RLUIPA does not authorize suits for damages against state officials in their individual capacities because individual state officials are not recipients of federal funding and nothing in the statute suggests any congressional intent to hold them individually liable.") (citing *Wood v. Yordy*, 753 F.3d 899 (9th Cir. 2014)); *Demers v. Austin*, 746 F.3d 402, 417 (9th Cir. 2014) (qualified immunity does not preclude injunctive relief).

Further, Plaintiff's RLUIPA claim for equitable relief is moot because Plaintiff has been released from the custody of the jail. "Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (quoting *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012)). Although there is an exception to the mootness doctrine for claims that are capable of repetition, yet evade review, that exception is limited to cases where the duration of the challenged action is too short to be fully litigated before it ceases, and where there is a reasonable expectation that the plaintiff will be subjected to the same action again. *Alvarez*, 667 F.3d at 1064. The possibility that an inmate may commit another crime and be returned to custody is too speculative a basis on which to conclude that his claims are capable of repetition. *Id.* at 1064-65. Here, there is no evidence of a non-speculative reasonable expectation that Plaintiff will be subject to the jail's meal policies again.

Likewise, although an exception to mootness has been recognized where Plaintiff is challenging ongoing policies to which others will continue to be subject, the Ninth Circuit Court of Appeals has not extended this exception beyond "short-lived pretrial proceedings in criminal prosecutions, where civil class actions would not be conducive to obtaining the relief sought." *Id.* at 1065. The *Alvarez* Court specifically refused to extend the exception to "RLUIPA claims challenging prison policies affecting the conditions of post-conviction incarceration" even where "some of the policies and practices" remained ongoing and continued to affect current inmates because those inmates could bring their own RLUIPA claims challenging those policies. *Id.* at 1065. Although Plaintiff here challenges jail policies, as in *Alvarez*, there is no evidence in the Record before this Court to suggest that other inmates currently subject to the jail's policies would be unable to litigate their RLUIPA claims to completion or to initiate a class action to obtain relief. *See id.*; *Jones*, 791 F.3d at 1031 (Plaintiff's RLUIPA claim was moot because injunctive relief would have no practical effect on his rights and would not redress in any way the injury he originally

asserted); *see, e.g.*, *Shields v. Ahern*, No. 16-cv-00331-JD, 2017 WL 3394758, at * 3 (N.D. Cal. Aug. 8, 2017) (Plaintiff's claims for injunctive relief under RLUIPA were moot where there was no reasonable expectation or probability that he would again be transferred to the jail where the alleged violations occurred). Accordingly, Plaintiff's RLUIPA claim is moot, and will be dismissed.

### B. Fourteenth Amendment Conditions-of-Confinement Claim

A pretrial detainee has a right under the Due Process Clause of the Fourteenth Amendment to be free from punishment prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Pretrial detainees are entitled to 'adequate food, clothing, shelter, sanitation, medical care, and personal safety.'" *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)). To state a claim of unconstitutional conditions of confinement against an individual defendant, a pretrial detainee must allege facts that show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

Whether the conditions and conduct rise to the level of a constitutional violation is an objective assessment that turns on the facts and circumstances of each particular case. *Id.*; *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005). However, "a de minimis level of imposition" is insufficient. *Bell*, 441 U.S. at 539 n.21. In addition, the "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). Thus, a

1    plaintiff must "prove more than negligence but less than subjective intent—something akin
2    to reckless disregard." *Id.*

3    Plaintiff's conditions-of-confinement claim is based on his allegations that he was
4    repeatedly served moldy bread, rotten fruit, and food with rocks in it. There is no evidence
5    before the Court that Defendants Herrera or Ogar were involved in the preparation of
6    Plaintiff's food or that Plaintiff complained to them about specific instances of being served
7    such food or that they responded with a reckless disregard to a risk to Plaintiff. Plaintiff's
8    allegations that he was served such food lack any specific detail such as when he was served
9    such food, and whether he told anyone at the time of service about the food, and, if so,
10   what their responses were, and Plaintiff has failed to produce any evidence that Herrera or
11   Ogar were involved in the alleged service of such food to Plaintiff or acted in any way that
12   could constitute a reckless disregard of a risk to Plaintiff. Moreover, Plaintiff has not
13   produced any evidence contradicting Defendants' evidence that the food served in the jail
14   goes through significant quality control measures, and the Food Factory passes Maricopa
15   County Health Inspections. Accordingly, summary judgment will be granted in favor of
16   Defendants as to Plaintiff's Fourteenth Amendment conditions-of-confinement claim.

### C.    First Amendment Free Exercise Claim

Defendants assert that Herrera and Ogar do not have policymaking authority and it is the Food Services Commander who makes the final decision on what is included in the inmate diet, and they assert that there is no evidence that they were responsible for any policy that denied Plaintiff the diet he requested. Indeed, there is no evidence in this Record that Herrera and Ogar made the decision to deny Plaintiff the specific diet he requests and summary judgment will be granted in favor of Defendants Herrera and Ogar. Alternatively, as discussed below, there is no evidence in this Record that Plaintiff's First Amendment rights were violated.

Defendants argue that providing Plaintiff a Halal meal that is not prepared by Muslims in the name of Allah is reasonably related to a legitimate governmental interest.

"Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'" *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious belief." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994); *see Shakur*, 514 F.3d 884-85 (noting the Supreme Court's disapproval of the centrality test and finding that the sincerity test in *Malik* determines whether the Free Exercise Clause applies). If the inmate makes this initial showing, he must then establish that prison officials substantially burden the practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. *Shakur*, 514 F.3d at 884-85.

A regulation that burdens the First Amendment right to free exercise may be upheld only if it is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). This determination requires analysis of four prongs: (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest; (2) whether there are alternative means of exercising the right that remain open to inmates; (3) the impact accommodation of the right will have on guards and other inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives. *Id.* at 90.

As to the first *Turner* factor, Defendants assert that simplifying meal service, managing staff resources, and lowering costs are legitimate governmental interests. Specifically, Defendants assert that serving Halal-compliant meals, but not meals prepared by Muslims in the name of God, is rationally related to streamlining food production and managing staff resources. Defendants assert that the Food Factory consolidation of the vegetarian, kosher, and diabetic diets into the regular diet allowed the Food Factory to produce healthy meals that met the religious requirements of most inmates, with six fewer employees, and a food cost of $280,000 annually. Defendants have shown that not requiring Muslims to prepare food in the name of God is rationally related to streamlining

1  food production and managing staff resources because the MCSO contracts with outside vendors and strives to efficiently provide food in compliance with most inmates' religious requirements.

As to the second *Turner* factor, Defendants assert that Plaintiff can pray, read scriptures, and counsel with spiritual leaders and is thus not deprived of all means of religious exercise or expression. With regard to meals in particular, Plaintiff is being provided a Halal diet, although it is not the exact diet that Plaintiff himself considers to be Halal. This factor weighs in favor of Defendants. *See Shakur*, 514 F.3d at 886 (where inmate retained the ability to participate in other significant rituals and ceremonies of his faith, he had alternative means of exercising his religion despite the denial of a particular diet request).

Defendants assert that with regard to the third *Turner* factor, accommodating Plaintiff's need for food prepared by sincere Muslims in the name of God defeats the Food Factory's goals of preparing meals in an efficient and cost effective way and would require the Food Services Division to ask employees about their religious beliefs and would require those employees to pray as an additional duty of their position, and additional quality control and record keeping procedures would have to be established. This factor weighs in favor of Defendants.

As to the fourth *Turner* factor, Defendants assert that there is no readily available alternative source for Plaintiff's food as Plaintiff is already provided a Halal diet. This factor weighs in favor of Defendants.

Because Defendants have shown that not providing Plaintiff the exact Halal diet he seeks is reasonably related to legitimate penological interests, summary judgment will be granted in favor of Defendants as to Plaintiff's First Amendment free exercise claim.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 85).

(2) Defendants' Motion for Summary Judgment (Doc. 85) is **granted**, and the action is terminated with prejudice. The Clerk of Court must enter judgment accordingly.

Dated this 23rd day of October, 2019.

Honorable Steven P. Logan
United States District Judge